# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| GATEWAY CLIPPERS HOLDINGS LLC, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:20CV1676 HEA |
| WEST BEND MUTUAL INSURANCE COMPANY, | ) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss, [Doc. No. 16]]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion will be granted.

## Facts and Background

This case is one of the many cases involving insurance coverage for certain economic losses and ill effects to businesses attributable to the COVID-19 pandemic. Plaintiff is the owner and operator of 20 franchised Great Clips hair salons in the St. Louis Metropolitan area in Missouri and Illinois. Plaintiff purchased a business insurance policy from Defendant which provided for indemnification for actual business losses incurred when business operations are involuntarily suspended, interrupted, or curtailed because of direct physical loss of or damage to its property. Plaintiff alleges that in March of 2020, it closed all of its

Missouri and Illinois salons for up to two months as a result of the risks of staying open during the COVID pandemic. Plaintiff also incurred extra expenses for items necessary to keep the salons open, such as plexiglass dividers, masks, and extra cleaning supplies.

Plaintiff submitted claims for loss of business income and necessary extra expense incurred. Plaintiffs allege that Defendants have refused to pay Plaintiffs though Plaintiffs experienced a "physical loss of" their insured properties due to the COVID-19 pandemic.

Plaintiff brought this action Defendant insurer under the policy. The Complaint brings nine counts: Business Income Breach of Contract, Count I; Breach of The Implied Covenant of Good Faith and Fair Dealing Applicable to Business Income, Count II; Declaratory Relief in Connection with Business Income, Count III; Extra Expense Breach of Contract, Count IV; Breach of The Implied Covenant of Good Faith and Fair Dealing in Connection with Extra Expense Coverage, Count V; Declaratory Relief in Connection with Extra Expense Coverage, Count VI; Civil Authority Breach of Contract, Count VII; Breach of the Implied Covenant of Good Faith and Fair Dealing Applicable to Civil Authority Coverage, Count VIII; and Declaratory Relief in Connection with Civil Authority Coverage, Count IX. Defendants have moved to dismiss under Fed.R.Civ.P.

12(b)(6), arguing the Complaint fails to state a claim upon which relief can be granted.

## Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). If a pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). The factual content of the plaintiff's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). If a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

When ruling on a motion to dismiss, the Court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and must grant all reasonable inferences in its

favor, *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677–78. Indeed, "[c]ourts should dismiss complaints based on 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.' " *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555).

## Discussion

The relevant policy provisions are:

A. Coverage

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the declarations caused by or resulting from any Covered Cause of Loss. ...

3. Covered Causes of Loss

> Direct physical loss unless the loss is excluded or limited.

This coverage is extended to include (1) Business Income; (2) Extra Expense; and (3) Civil Authority coverage subject to the terms and conditions detailed below:

5. Additional Coverages and Coverage Extensions

> ...

4

b. Business Income

(1) Business Income (a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.... ...

e. Civil Authority

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

...

n. Extra Expense

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss....

The Policy also contains (1) a Virus Exclusion and (2) a

Consequential Losses Exclusion:

> B. Exclusions
>
> ...
>
> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
> ...
>
> b. Consequential Losses
>
> Delay, loss of use or loss of market. ...
>
> l. Virus Or Bacteria
>
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.
>
> ...
>
> 4. Business Income and Extra Expense Exclusions
>
> a. We will not pay for: ... (1) Any other consequential loss.

The policy at issue only covers "actual loss of Business Income" due to the "necessary 'suspension' of 'operations' during the 'period of restoration' " and only if the suspension was "caused by direct physical loss of or damage to property at the described premises." The policies do not define "loss" or "damage" as used in the phrase "direct physical loss of or damage to property." Plaintiff alleges that it had a physical loss of its insured properties arising from the COVID-19 pandemic." It argues that it "suffered a 'loss of' its properties when it was unable to use them for the hair salon business and its customers suffered a loss of the

6

properties when they were unable to access them for salon services." Since it is a legal conclusion that Plaintiff suffered a loss of r properties, the Court will not assume such allegations are true, but the Court will determine that legal conclusion based on Plaintiffs' pleaded facts.

**Contract Claims**

Under Missouri law, a court interpreting an insurance policy should "give[ ] the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance." *Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245, 247 (Mo. banc 2019) (quoting *Doe Run Res. Corp. v. Am. Guar. & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. banc 2017)). In addition, courts "should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc. 2009). When an insurance policy is "clear and unambiguous," the court must enforce the policy as written. *Seaton*, 574 S.W.3d at 247.

Under the plain meaning of the policy language and evaluating the policy as a whole, Plaintiff's decision to close the salons did not constitute a "direct physical loss of" its property. Nothing physical happened to the salons. Rather, there only was a change in circumstances. The coronavirus pandemic, the associated opinions of industry groups, and the public may have caused demand for salon services to plummet, but the transitory reduction of the properties' functionality, based on no

direct physical occurrence, does not amount to a loss of the properties under the plain meaning of the policies.

In line with many other courts before it, the Court concludes that Plaintiff did not plead a "direct physical loss of" its property because it did not plead any "physical alteration of property, or, put another way, a tangible impact that physically alter[ed] property." *See Zwillo V, Corp. v. Lexington Ins. Co.*, 504 F. Supp. 3d 1034, 1039 (W.D. Mo. 2020), *appeal dismissed*, No. 21-1015, 2021 WL 2792962 (8th Cir. Mar. 18, 2021); *accord Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (applying Iowa law and finding no coverage for COVID-19 business losses under policy language covering suspension of operations "caused by direct 'loss' to property"). If the changes in circumstance alone caused by the pandemic qualified as a direct physical loss of the property, then coverage would be "established *whenever* property cannot be used for its intended purpose." *Oral Surgeons*, 2 F.4th at 1144.

Plaintiff argues that the "of" in "direct physical loss *of* or damage to" shows that it is not the property's loss that is covered but the insured's loss. Thus, since Plaintiff was unable to use the properties for salon services, it suffered a "loss of" the properties during that time. The Court finds this reading too strained and against the policy's plain meaning. In doing so, this Court joins numerous others in finding no coverage under identical language. *See, e.g.*, *Glenn R. Edwards, Inc., et*

8

*al. v. The Travelers Companies, et al.*, No. 4:20-CV-00877-MTS, 2021 WL 3525168, at *1–5 (E.D. Mo. Aug. 11, 2021)(Plaintiffs did not plead a direct physical loss of or damage to their properties based on coronavirus closures); *Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*, 511 F. Supp. 3d 978, 982 (E.D. Mo. 2021) ("The complaint does not allege any facts demonstrating that Ballas sustained a 'direct physical loss of or damage to property' resulting from a 'covered cause of loss,' which is required for coverage under the Business Income and Extra Expense provision."); *United Hebrew Congregation of St. Louis v. Selective Ins. Co. of Am.*, No. 4:20-cv-892-HEA, 2021 WL 2823213, at *1, *3 (E.D. Mo. July 7, 2021) (dismissing claims despite same argument by plaintiff that *of* in loss of or damage to is critical); *Monday Rests. LLC v. Intrepid Ins. Co.*, No. 4:20-cv-1015-SNLJ, 2021 WL 2222692, at *3 (E.D. Mo. June 2, 2021) ("Plaintiffs have not alleged a 'direct physical loss of or damage to property.' ").

Besides the ordinary meaning of the coverage provision, other provisions of the policy also demonstrate that Plaintiff's alleged inability to use its insured properties in a typical manner did not amount to a direct physical loss of property. *See Ritchie*, 307 S.W.3d at 135 (instructing courts to "evaluate policies as a whole"). For example, the policy provides that if a policy holder has coverage for Business Income and Extra Expense—like Plaintiffs do here—then the policy holder can "*extend* that insurance to apply to" loss of Business Income and

9

"reasonable and necessary Extra Expense" incurred requires the premises to undergo a period of restoration. Under Plaintiff's proposed interpretation of "direct physical loss of" property, this provision would be surplusage. Under Plaintiffs' reading, it "suffered a 'loss of' its properties when it was unable to use them for salon purposes *accord id.* ("The COVID-19 pandemic caused a direct physical loss of Plaintiffs' Covered Property ... by denying Plaintiffs the direct ability to physically access and use the property in the normal fashion in their business."). But if the mere inability to use the properties for salon purposes counted as a "direct physical loss of" the properties, then it would be unnecessary to "extend" the Business Income and Extra Expense insurance to apply to situations where repair or restoration was required.

Likewise, Plaintiff's claim that it is covered under the Civil Authority Coverage fails. Plaintiff's allegations fail to set forth any facts to support its claim that "the coronavirus caused damage to property other than at the described premises and civil authorities prohibited access to those premises. There is no identification of what other properties were damaged, or state how the coronavirus caused damage to the other property.

Since Plaintiff alleged no direct physical loss of its property, it was not entitled to coverage under the policy. Thus, the Court will dismiss Count I (Business Income Breach of Contract), Count III (Declaratory Relief Applicable to

10

Business Income), Count IV (Extra Expense Breach of Contract), Count VI (Declaratory Relief Applicable to Extra Expense), Count VII (Civil Authority Breach of Contract), and Count IX (Declaratory Relief in Connection with Civil Authority Coverage).

**Implied Covenants Claims**

Under Missouri law, a duty of good faith and fair dealing is implied in every contract. *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.*, 464 S.W.3d 177, 185 (Mo. banc 2015). "A breach of the covenant of good faith and fair dealing occurs where one party 'exercise[s] a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the other party] the expected benefit of the contract.' " *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1112 (8th Cir. 2006) (alterations in original) (quoting *Mo. Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 46 (Mo. Ct. App. 2002)); *accord Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 190 (Mo. Ct. App. 2017).

The purpose of a good faith and fair dealing cause of action is "to prevent opportunistic behavior where one party exploits changing economic conditions to the detriment of the other party." *Rock Port Mkt.*, 532 S.W.3d at 188 (quoting *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012).

The Court has reviewed the Complaint in its entirety along with Plaintiff's opposition briefing. Nowhere has the Court found allegations that the express terms of the policies conferred a judgment on Defendant that Defendant acted on in a manner evading the spirit of the policies or denying the expected benefit of the policies. To the extent Plaintiff's allegation is that Defendant exercised a judgment in denying it coverage for its claim, such allegation would not be a proper claim for a breach of the duty of good faith and fair dealing because "an insurance company's denial of coverage itself is actionable only as a breach of contract and, where appropriate, a claim for vexatious refusal to pay." *Robert E. Levy, D.M.D., LLC v. Hartford Fin. Servs. Grp. Inc.*, No. 4:20-cv-00643-SRC, 2021 WL 598818, at *12 (E.D. Mo. Feb. 16, 2021) (quoting *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 69 (Mo. banc 2000)) (dismissing dental office's breach of covenant of good faith and fair dealing claims relevant to COVID-19 business loss coverage). As such, the Court will dismiss Count II (Breach of Implied Covenant of Good Faith and Fair Dealing Applicable to Business Income), Count V (Breach of the Implied Covenant of Good Faith and Fair Dealing in Connection with Extra Expense Coverage), and Count VIII (Breach of the Implied Covenant of Good Faith and Fair Dealing Applicable to Civil Authority Coverage).

**Virus or Bacteria Exclusion**

Even assuming Plaintiff's theory that an inability to physically access and use the property in the normal fashion constitutes a "direct physical loss of" the property under the policies, the exclusion of loss due to Virus or Bacteria would apply. Plaintiff argues that the COVID-19 pandemic caused their "losses," not the coronavirus, and, therefore, the Virus Exclusion does not apply to their "loss and damage." Given that COVID-19 is nothing more than disease caused by the coronavirus, their argument is untenable.

## Conclusion

Since Plaintiff did not plead a direct physical loss of or damage to its properties, its claims fail and will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 16], is **GRANTED**.

A separate Order of Dismissal will be entered this date.

Dated this 26th day of August 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE